UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



| UNITED STATES OF AMERICA | § | H 11     110 |
| --- | --- | --- |
| | § | Criminal No. |
| v. | § | |
| | § | UNDER SEAL |
| EKPEDEME OBOT, | § | |
| | § | |
| Defendant. | § | |

United States District Court
Southern District of Texas
FILED

FEB 1 4 2011

David J. Bradley, Clerk of Court

**INDICTMENT**

The Grand Jury charges:

**UNSEALED PER ARREST**

**General Allegations**

At all times material to this Indictment:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of sixty-five or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Medicare was subdivided into multiple Parts. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

1

3. Orthotic devices were a type of DME that included rigid and semi-rigid devices such as foot braces, ankle braces, knee braces, back braces, shoulder braces, elbow braces, wrist braces and hand braces (collectively "orthotics").

4. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Medicare identification number.

5. DME companies, pharmacies, physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6. Medicare reimbursed DME companies and other healthcare providers for services rendered to beneficiaries. Medicare would generally pay reimbursement for DME and related medications only if they were prescribed by the beneficiary's physician and were medically necessary to the treatment of the beneficiary's illness or injury.

7. To receive reimbursement from Medicare, providers submitted or caused the submission of claims to Medicare for payment of services to beneficiaries, either directly or through a billing company.

8. CMS contracted with Durable Medical Equipment Regional Carriers ("DMERCs") to provide Medicare benefits and process claims for reimbursement. The DMERC that processed and paid Medicare DME claims in Texas was CIGNA Government Services ("CIGNA").

9. To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to CIGNA. When a Form 1500 was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

10. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment or medicine provided to the beneficiary, the date the equipment or medicine was provided, the cost of the equipment or medicine and the name and unique physician identification number of the physician who prescribed or ordered the equipment or medicine.

11. Praise DME ("Praise") was a Texas business entity purportedly doing business at 6201 Bonhomme Road, Suite 290N-1, Houston, Texas 77036. Among other things, Praise billed Medicare for orthotics, heat pads, enteral feeding supplies, power wheelchairs and other DME purportedly provided to Medicare beneficiaries.

12. Defendant **Ekpedeme Obot**, a resident of Harris County, Texas, owned and operated Praise DME.

## COUNT 1
## False Statements Relating to Health Care Matters
## (Violation of 18 U.S.C. § 1035)

1. Paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about September 17, 2007, in the Houston Division of the Southern District of Texas, defendant,

**EKPEDEME OBOT,**

in a matter involving a health care benefit program, namely Medicare, knowingly and willfully made materially, false, fictitious and fraudulent statements and representations, and made and used materially false writings and documents, by submitting a Medicare Enrollment Application [form CMS-855S] to Medicare, knowing the document contained materially false, fictitious and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items and services. The Medicare Enrollment Application included a section entitled "Adverse Legal Actions/Convictions," which required DME providers to list prior felony convictions. Defendant Ekpedme Obot failed to list his prior felony conviction. Defendant Ekpedeme Obot made representations he had only been subject to a recoupment action by Texas Medicaid in November 2006 that was resolved by entering into a payment plan.

All in violation of Title 18, United States Code, Section 1035.

## COUNTS 2-6
## Health Care Fraud
## (Violation of 18 U.S.C. §§ 1347 and 2)

1. Paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. In the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**EKPEDEME OBOT,**

aided and abetted by others, known and unknown to the Grand Jury, in connection with delivery of and payment for healthcare benefits, items and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of said healthcare benefit program.

### Purpose of the Scheme and Artifice

3. It was the purpose of the scheme and artifice for defendant to unlawfully enrich himself through the submission of false and fraudulent Medicare claims for DME that were not medically necessary and, in some cases, never provided to the Medicare beneficiaries.

### The Scheme and Artifice

4. Defendant **Ekpedeme Obot** applied for and obtained a Medicare provider number for Praise DME in order to submit Medicare claims for DME.

5

5. Defendant **Ekpedeme Obot** would obtain and use, without consent or authorization, the personal health information of Medicare beneficiaries. The types of health information obtained included names, date of births, medical diagnoses and Medicare numbers among others. **Ekpedeme Obot** used the Medicare beneficiaries' information to submit claims to Medicare.

6. Defendant **Ekpedeme Obot** submitted and caused the submission of claims to Medicare for DME, including orthotics and heat pads, that were not medically necessary and not requested by the beneficiaries or prescribed by physicians.

7. Defendant **Ekpedeme Obot** would submit and cause to be submitted claims to Medicare for DME that were never provided to beneficiaries. In some cases, the Medicare beneficiary never received any orthotics or heat pads. In other cases, the beneficiary received orthotics and heat pads, but received less expensive and lower quality orthotics and heat pads than those for which Medicare was billed.

8. From on or about March 2007 through August 2008, defendant **Ekpedeme Obot** submitted and caused the submission of approximately $1,302,278 in claims to Medicare for DME purportedly provided by Praise. Medicare, through electronic funds transfer, deposited money into a bank account controlled by **Ekpedme Obot**. The money paid by Medicare was based upon the fraudulent DME claims submitted by defendant **Ekpedeme Obot**.

## Acts in Execution of the Scheme and Artifice

9. On or about the dates specified as to each count below, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**EKPEDEME OBOT,**

aided and abetted by others, known and unknown to the Grand Jury, in connection with delivery of and payment for healthcare benefits, items and services, did knowingly and willfully execute and attempt to execute, the above-described scheme and artifice to defraud a healthcare benefit program affecting commerce, that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of said healthcare benefit program:

| Count | Medicare Beneficiary | Approx. Date of Claim | Description of Item Billed | Approx. Amount of Claim |
|---|---|---|---|---|
| 2 | E.S. | 04/25/2008 | Orthotics | $3,176 |
| 3 | V.H. | 05/20/2008 | Orthotics | $3,895 |
| 4 | A.M. | 05/28/2008 | Orthotics | $3,895 |
| 5 | L.M. | 06/04/2008 | Orthotics | $2,944 |
| 6 | J.D. | 07/10/2008 | Orthotics | $2,449 |

In violation of Title 18, United States Code, Sections 1347 and 2.

# CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a) (7))

1. The allegations contained in Count 1 through Count 6 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which defendant **Ekpedeme Obot** has an interest pursuant to Title 18, United States Code, Section 982.

2. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendant:

### EKPEDEME OBOT

that upon conviction for the healthcare fraud offenses charged in Count 1 through Count 6 of this Indictment, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture. The property subject to forfeiture is approximately $945,637.

### Substitute Assets

3. If any of the property described above, as a result of any act or omission of defendants:

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(I).

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

Original Signature on File

FOREPERSON

JOSE ANGEL MORENO
UNITED STATES ATTORNEY

_____
JUSTIN S. BLAN
SPECIAL ASSISTANT UNITED STATES ATTORNEY